UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN PETERSON and LUCILLE PETERSON,<br>Plaintiffs,<br><br>v.<br><br>DEBORAH JEAN TOMICH DAIBER;<br>JANE ELLEN TOMICH; and<br>TOMICH LAW FIRM, LLC,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26-cv-00537-JSD<br><br>JURY TRIAL DEMANDED |

**Reply Supporting Leave to File Second Amended Complaint**

1 Plaintiffs Steven and Lucille Peterson, each self-represented and solely for himself or herself, reply to ECF 36 under ECF 34. They request leave under Rule 15(a)(2), substitution of the accompanying corrected proposed Second Amended Complaint, and party narrowing under Rule 21. Defendants consent to dropping Steven and Jane Ellen Tomich and object to the remaining claim on futility. ECF 36, PageID 645–46. ECF 33-2 remains a proposal; ECF 34 denied ECF 28 as moot and set October 16 for this reply.

## I. Rule 15 and the proposed claim

2 Leave should be freely given when justice so requires, subject to futility and the other recognized grounds. Foman v. Davis, 371 U.S. 178, 182 (1962). Futility asks whether the proposed claim survives Rule 12(b)(6). Zutz v. Nelson, 601 F.3d 842, 850–51 (8th Cir. 2010). Well-pleaded facts and reasonable inferences receive favorable treatment; legal conclusions do not. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A disputed legal duty is a real futility issue and Plaintiffs do not ask the Court to defer it. They ask consideration of the corrected proposed claim, not adoption of every assertion in earlier, broader pleadings.

## II. The rule proposed, and where it stops

3 Stated affirmatively: where an attorney, in the course of representing a client, expressly accepts a discrete and identified undertaking whose object is to protect a specifically identified nonclient from a specifically identified and then-pending intervention, and the client retained the attorney in part for that purpose, the attorney owes that nonclient ordinary care as to that undertaking and as to nothing else.

4 Stated negatively, which is the half that matters. The rule does not reach a lawyer's general representation of a parent, harms outside the accepted undertaking, or a case where the nonclient's interests are adverse to the client's. It does not apply absent a specifically identified threat already pending when the undertaking was accepted, where the client's purpose was his own benefit, or

where the lawyer's only connection to the nonclient is that the litigation concerned her. Plaintiffs do not ask this Court to hold that a parent's attorney owes a duty to the child; every adverse authority Defendants cite rejects that proposition, and Plaintiffs reject it with them.

## III. The Erie posture

5 This Court sits in diversity and must predict how the Supreme Court of Missouri would decide the question; Missouri provides no mechanism by which a federal district court may certify a question to that Court. Donahue v. Shughart, Thomson & Kilroy, P.C., 900 S.W.2d 624 (Mo. banc 1995), is a decision of that Court. Minor v. Terry, 475 S.W.3d 124 (Mo. App. E.D. 2014), and Shanahan v. Spencer Fane, LLP, 730 S.W.3d 206 (Mo. App. E.D. 2025), are intermediate appellate decisions, and Plaintiffs do not minimize them. Such a decision is strong evidence of state law and must be followed unless the federal court is convinced by other persuasive data that the State's highest court would decide otherwise. United Fire & Casualty Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003). Plaintiffs accept that standard and the burden it imposes. Their persuasive data is the text and application of Donahue itself, addressed in Part VI, together with the fact that neither Minor nor Shanahan involved an identified protective undertaking or any direct professional dealing between the attorney and the nonclient. If the Court concludes those decisions foreclose the pleaded theory on their own terms, futility follows.

## IV. Specific intent is supported; recognition of duty remains contested

6 The ordinary duty runs to the client. Donahue permits the relationship requirement to be satisfied by services the client specifically intended to benefit the nonclient, then weighs specific intent, foreseeability, certainty of injury, causal closeness, prevention of harm and burden on the profession. Donahue, 900 S.W.2d at 628–29. It reinstated malpractice claims arising from intended testamentary transfers; it did not adjudicate liability or recognize a general family-law duty. Id. at 629–30.

7 In applying its test, Donahue examined Stockton's primary purpose in the particular checks and deed and acknowledged his desire to distribute property as directed. 900 S.W.2d at 629. That application supports examining the services alleged to have been intended for Lucille's direct protection rather than ending the inquiry because Steven benefited somewhere in the engagement. The analogy has limits: Donahue involved sole intended recipients of transfers and a deceased client. Lucille asks application of its test to the pleaded undertaking, not a ruling that concurrent custody interests can never defeat duty.

8 The client stated the purpose in writing, to the attorney, approximately eight weeks after the May 13 engagement and approximately five weeks after the June 4 entry of appearance, unprompted. On July 10, 2019, Steven Peterson wrote to Tomich Daiber and co-counsel: "this is the 4th testimony hearing that Lucy has been scheduled for with no opportunity for same… I have nevertheless hired both

of you for your experience and brains. I also respect that Lucy needs to speak for herself – she is more than capable of that and was prepared to do so. She simply has not been given the chance." That sentence identifies the person to be benefited, states the benefit, and ties it to the retention. It predates any dispute with counsel by years. Plaintiffs do not plead the number of prior settings as an established fact; it is the client's contemporaneous statement, and the docket records that the cause was called on June 25, 2019 and Petitioner failed to appear. The email is offered for the purpose it states, not as proof of the settings it counts.

9 Here the April 26 motion identified the child, compulsory program and transport before retention. The governing May 13 transcript places "Yeah, and that will happen over my dead body" with Steven, not counsel. Tomich identified the Family Bridge motion and passed May 3 setting; called the proposal "a deprogramming type thing"; and responded "Yeah, that's just not going to work" and "She's going to be nuts." Those words show notice and anticipated distress, not a diagnosis or guarantee. Steven's instruction to avoid omissions and spring-break contempt received "Yes" and "Yes. Okay. Absolutely. All right." Corrected proposal ¶¶ 16–24, 51; corrected Ex. 2, paragraph indices 73–74, 392–395, 401–403, 416–418, 592–595.

10 The service language matters. Tomich proposed education and influence with Shea; after an intervening response from Steven she continued "about your

daughter" and described more aggressive handling of the opposing party. Her later statement that Lucille would testify and that the judge would see no purpose in forced visits is treated as a prediction, not a promised result. Corrected proposal ¶¶ 20, 23–24, 51; corrected Ex. 2, paragraph indices 71, 350–352, 561–563, 591.

11 Later communications reinforce the purpose while revealing limits. Steven's October 25 reminder concerned the child's voice and the reasons for engagement; his December 3 request sought an order involving Terry Boyer. Tomich's own October 25 email described the ultimate issue as whether custody was withheld without good cause, and her November 27 update predates the December 3 request. These support an inference of accepted child-focused work within Steven's case, not acceptance of every later request. Corrected proposal ¶¶ 28, 37–39, 51, 55; Exs. 4, 19–21.

12 Johnson directs attention to actual services, files and conduct rather than an artificially narrow characterization of the assignment. Johnson v. Sandler, Balkin, Hellman & Weinstein, P.C., 958 S.W.2d 42, 50–54 (Mo. App. W.D. 1997). It did not establish a custody duty.

## V. The remaining Donahue factors

13 Foreseeability. The attorney was told at the engagement that a pending motion sought to send Lucille out of state for two weeks and then to her mother for ninety days. She named the program before her client did and stated the consequence

herself. The motion was filed, its hearing date had passed, and the child's identity, age and circumstances were disclosed at the first meeting.

14 Certainty of injury. Measured at the time of the alleged breach, a specific motion sought specific coercive relief against one identified child. Missouri recognizes the category of harm: Bass v. Nooney Co., 646 S.W.2d 765, 772–74 (Mo. banc 1983), rejected the impact rule and requires a foreseeable risk of distress and a medically diagnosable injury severe enough to be medically significant. Bass supplies that injury standard only; duty, medical significance and causal proof remain required.

15 Closeness of connection. Two things must be kept apart here, and Plaintiffs keep them apart. The first is direct dealing. The attorney prepared questions addressed to Lucille's own life and asked that Lucille's answers be returned to her; and before the December 11, 2019 proceeding she met privately with Lucille in a room outside the courtroom and prepared her responses. Lucille was a minor and had no independent counsel present. Corrected proposal ¶¶ 35–38. That is a professional service rendered to the nonclient, in person, on the nonclient's own testimony, and it bears on specific intent, on the attorney's knowledge and acceptance of the child-directed work, and on whether the benefit to Lucille was incidental.

16 The second thing is causal closeness, which direct dealing does not supply. Witness preparation did not cause the March 13, 2020 transport, and Plaintiffs do not argue that it did. Causal closeness depends on the separate showing addressed

in Part VIII: that reasonable performance of the protective undertaking would probably have produced interim relief effective against the transport. Plaintiffs carry that burden there and do not borrow from the contact evidence to discharge it.

17 The policy of preventing future harm. If no duty runs to the identified beneficiary of an accepted protective undertaking, the undertaking is unenforceable by the only person it was for, and the client's own damages are different in kind. Lucille was a minor and not a party. Plaintiffs do not assert that she had no remedy of any kind, or that the guardian ad litem's role in Missouri is settled against her; those duties were not briefed and Plaintiffs do not characterize them here.

18 Burden on the profession. Slight, because the trigger is rare. It requires an identified protective undertaking, a specifically identified nonclient, a threat already pending, a client purpose directed at that nonclient, and here direct professional dealings between attorney and nonclient. A lawyer who represents a parent, never deals with the child and prepares no work product for the child's own testimony is outside the rule entirely. Plaintiffs further concede the components where the interests diverged — child-support abatement under Mo. Rev. Stat. § 452.340.2, fee recovery, and the defense of the withholding-custody and alienation allegations — and assert no duty and seek no damages as to any of them.

## VI. Minor, Shanahan and the strongest contrary authorities

19 Minor and Shanahan impose a substantial limitation: intended direct and exclusive benefit, rather than a benefit incidental to services for the client. Minor, 475 S.W.3d at 132–33, overruled on other grounds by Vacca v. Missouri Department of Labor & Industrial Relations, 575 S.W.3d 223 (Mo. banc 2019); Shanahan, 730 S.W.3d at 210–11. Vacca's judicial-estoppel ruling does not erase Minor's nonclient-duty analysis, and Shanahan's adverse merits reasoning cannot be dismissed as a preservation ruling.

20 Two responses, offered as the persuasive data Garvey requires. The phrase "direct and exclusive" appears nowhere in Donahue; Shanahan draws it from Minor. And Donahue's application tolerated a residual benefit to the client; read to require that the client derive no benefit at all, Donahue itself would have come out the other way. Plaintiffs do not say the Court of Appeals erred. The phrase was formulated where the asserted benefit was statutory or collective, and neither court was asked whether it reaches an identified protective undertaking performed in part through direct dealings with the nonclient.

21 The proposed distinction is that preventing an identified child's compelled transport was the immediate object of particular protective services. Steven also benefited from custody relief and sought support and fees. Lucille does not allege those interests were exclusively hers or that Missouri has recognized a discrete-

task exception. If direct and exclusive benefit requires excluding Steven's benefit even as to that work, this theory faces a legal barrier, not a missing exhibit.

22 Alberts is the hardest Missouri case for Plaintiffs, and they state it accurately. Alberts v. Turnbull Conway, P.C., 641 S.W.3d 370, 371–79 (Mo. App. W.D. 2022). The client there did give instructions, and the lawyers did agree to prepare trust amendments that would have benefited the plaintiffs. The court still found no duty, because the amendment was never executed and the client remained free to change her intent until death, so the expected benefit was contingent rather than fixed. Plaintiffs do not say the Alberts plaintiffs identified no accepted task; they did. The distinction pressed here is that a pending coercive motion against an identified child is not a revocable future disposition: the threatened harm already existed, the person to be protected could not change, and the lawyer dealt with that person directly. Fallon v. Easley, 686 S.W.3d 287, 291–93 (Mo. App. E.D. 2024), presents adverse duty and independent proof problems and is not distinguished away. If Alberts means that instructions plus agreement can never suffice absent an executed instrument, that reading is adverse to Plaintiffs and they do not conceal it.

23 The foreign custody cases are persuasive adverse authority. McGee v. Hyatt Legal Services, Inc., 813 P.2d 754, 756–59 (Colo. App. 1990), rejected a child's duty theory against her own mother's lawyer and emphasized possible parent-child

divergence. Pelham v. Griesheimer, 440 N.E.2d 96, 100–01 (Ill. 1982), rejected the child-beneficiary theory while discussing a possible specifically undertaken notification task; that discussion was not a holding imposing liability and Plaintiffs do not present it as one. Rhode v. Adams, 957 P.2d 1124, 1126–28 (Mont. 1998), involved the adverse spouse's lawyer, but its no-duty reasoning and conflict concerns are central, not dispensable dicta.

24 Plaintiffs answer the conflict concern directly, because it is the real objection. A duty reaching components where the client's and the child's interests diverged would compromise undivided loyalty. The proposed rule is unavailable wherever they diverge and is pleaded only where they converged. In none of the adverse cases did the lawyer render professional services to the child in person.

## VII. Breach must follow the actual instructions and work

25 The August 6, 2019 email is adverse scope evidence. Steven told Tomich, "You do not need to prepare the counter motion. I have written it and Chris Karlen is going to file this week." Corrected proposal ¶ 29; Ex. 22. The claim cannot rest on any refusal to prepare that motion after reassignment. The proposed breach concerns the independently retained protective investigation, opposition, advice and interim-relief work. The precise assignment must be established; "first chair" alone does not allocate every task.

26 One omission is documented in the court's own records. November 14, 2019 was the first day of trial; the docket reflects a sound recording log for that day and continuance to December 11, where the log reads "DAY 2." Tomich Daiber did not appear on day one. The client wrote at 2:52 that afternoon. His message begins, "I am sorry to hear you are unwell," and continues, "We missed you this morning/afternoon in court." Plaintiffs quote both sentences, because the first is as much a part of the record as the second. On November 15 her office requested the hearing audio; on November 19 the clerk noted the audio CD was available; and on December 10 she billed time to review trial audio while preparing cross-examination and additional questions for Lucille. Corrected proposal ¶¶ 27, 32–39.

27 Plaintiffs state the limits plainly. The absence was explained at the time, by illness, and the client acknowledged it the same afternoon. Illness is not negligence, and Plaintiffs plead no abandonment, bad faith or unexplained disappearance. What is pleaded is the sequence and what followed: the component Tomich Daiber alone held went unrepresented on the first day of trial, and the child who had been prepared to testify attended and was not heard. Whether reasonable care required seeking a continuance, arranging substitute coverage or giving earlier notice is a question of professional care on which Plaintiffs accept the burden of proof. Co-counsel appeared, so the client was not unrepresented.

28 The proposal acknowledges the June 12 phone order, October and December question preparation, review of the Boyer email, co-counsel's November 8 motion and the December interim arrangement postponing Mother's custody demands until the then-set February trial. ¶¶ 26, 28–39. It alleges identifiable protective omissions rather than no work or nonperformance inferred from docket silence.

29 The actual Interim Order and Judgment is file-stamped and signed December 11, 2019, with a conflicting December 12 opening recital. Its paragraph 4 records Mother's agreement not to demand visitation or custody until the then-set February 5 trial. Plaintiffs do not contend that billed December order work produced no order. The asserted omission concerns protection against the specifically identified transport and intervention risk; the existing temporary relief and its duration must be accounted for. Corrected proposal ¶ 28; Ex. 17.

## VIII. Causation must account for the later court order

30 Nail requires causation in fact and proximate cause; a better hypothetical result cannot be assumed because a different step was possible. Nail v. Husch Blackwell Sanders, LLP, 436 S.W.3d 556, 562–66 (Mo. banc 2014). Thiel v. Miller, 164 S.W.3d 76, 82–88 (Mo. App. W.D. 2005), likewise requires a legally effective alternative. Expert proof is ordinarily necessary unless the negligence is clear and palpable.

31 The corrected proposal alleges that timely presentation of the pending request, the child's residence, schooling, wishes and the intervention's risks would probably have produced effective interim protection. It expressly acknowledges the order signed March 3 and filed March 4, 2020: Father's period ended at 5:00 p.m. on March 13, Mother's began then, and the separate spring-break provision concerned March 30. The first video overlay, 17:05:35, is not an authenticated clock. ¶¶ 41–42; Exs. 16–17.

32 The later judgment is concrete adverse evidence, not a neutral caption in the chronology. It found Lucille not credible when considering her custodial wishes and recorded the guardian ad litem's recommendation of ninety days without Steven. ECF 33-8, PDF pp. 89, 91 (PageID 581, 583). Those findings undercut an inference that her wishes alone would have secured relief. Plaintiffs must prove that an earlier protective presentation would probably have produced a different relevant result notwithstanding them.

33 Collins v. Missouri Bar Plan, 157 S.W.3d 726, 732–33, 736–39 (Mo. App. W.D. 2005), explains why a successor's unsuccessful corrective effort does not necessarily sever causation from earlier negligent advice. It involved client parents and does not establish Lucille's nonclient duty or authorize every requested loss.

## IX. Personal injury and legal recoverability are distinct

34 Lucille alleges her own involuntary restraint and transport, threats of force, fear, continuing functional and educational disruption, treatment and medication. Those are not Steven's fees or an entitlement to a custody award. The physical encounter, medical causal connection, and recoverability of each claimed loss remain issues for proof. Corrected proposal ¶¶ 14, 42–45, 57, 69.

35 Foreign decisions supply no controlling Missouri damages rule. Froid v. Zacheis, 494 P.3d 673, 677–82 (Colo. App. 2021), rejected a noneconomic theory but reinstated an economic claim; Gilbert v. Johnson, 13 N.W.3d 469, 471–76 (Neb. 2024), discussed a narrow egregious-conduct exception. Plaintiffs rely on neither moral blame nor an additional Donahue factor. Lucille seeks relief for her own injuries, not derivative payment of Steven's expenses. Minority tolling is pleaded under Mo. Rev. Stat. § 516.170 and the five-year provision of § 516.120(4).

## X. Relief requested

36 Plaintiffs ask the Court to permit substitution of the clean corrected proposal with both the operative ECF 1 comparison and the incremental ECF 33-2 comparison, to consider the corrected engagement excerpt through the directed procedure, to grant leave on the narrowed claim, and to drop Steven Peterson and Jane Ellen Tomich under Rule 21 on just terms. Because the revisions add substantive facts, Plaintiffs accept a reasonable opportunity for Defendants to respond.

Respectfully submitted,

________________________________________
Lucille Peterson, self-represented, solely for herself
4600 SW 34th Street, Box 141041, Gainesville, FL 32614
Telephone: 314-995-8786 | Email: spetersonandlpeterson@gmail.com
Date: 10/16/2026

________________________________________
Steven Peterson, self-represented, solely for himself
4600 SW 34th Street, Box 141041, Gainesville, FL 32614
Telephone: 314-279-4600 | Email: spetersonandlpeterson@gmail.com
Date: 10/16/2026

**Certificate of Service**

I certify that on 10/16/2026, I served a true copy of this document and its accompanying attachments by United States mail, first-class postage prepaid, on Peter J. Dunne, Pitzer Snodgrass, P.C., 100 South Fourth Street, Suite 400, St. Louis, Missouri 63102-1821, attorney for Defendants.

________________________________________
Lucille Peterson, self-represented, solely for herself
4600 SW 34th Street, Box 141041, Gainesville, FL 32614
Telephone: 314-995-8786
Email: spetersonandlpeterson@gmail.com