**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEVEN PETERSON & LUCILLE PETERSON, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 4:26-CV-537-JSD |
| DEBORAH JEAN TOMICH DAIBER et al, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before this Court are Defendants Deborah Jean Tomich Daiber's, Jane Ellen Tomich's, and Tomich Law Firm, LLC's (collectively "Defendants") Motion to Dismiss (ECF No. 18) as well as *pro se* Plaintiffs Steven and Lucille Peterson's[1] (collectively "Plaintiffs") Motion for Leave to File Second Amended Complaint and Drop Parties (ECF No. 33) and two other motions regarding evidence and sealing (ECF Nos. 32, 40). The motions are fully briefed and ready for disposition.

## FACTUAL BACKGROUND[2]

This matter arises from a custody modification and child support abatement proceeding ("Family Law Case") out of the Circuit Court of St. Charles County, Missouri, in which Defendants represented Steven concerning his daughter, Lucille. (ECF No. 1 ¶ 1.) In May 2019,

---

[1] Because Plaintiffs share a last name, the Court will refer to them by their first names for clarity. No familiarly or disrespect is intended.

[2] In accordance with the standards governing Rule 12(b)(6) motions, the relevant facts are drawn from Plaintiffs' operative pleading (ECF No. 1), *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014), or from "public records and materials embraced by the complaint[,]" *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008).

Steven attended an engagement meeting with Defendants, at which Defendants represented that they needed to file a motion to abate child support immediately and would file a modification motion right away. (*Id.* ¶¶ 18, 20.) Defendants also stated that Lucille was not going to the therapeutic reunification program that opposing counsel sought to impose. (*Id.* ¶ 20.) Further, Defendants represented that they had a working relationship with Lucille's Guardian Ad Litem ("GAL") and committed to applying that relationship on Steven's behalf. (*Id.*) Lucille did not attend the engagement meeting. (*Id.* ¶ 18.)

In June 2019, Defendants entered their appearance in the Family Law Case on behalf of Steven and filed a Motion to Quash a deposition. (*Id.* ¶ 22.) Defendants remained as counsel of record for Steven until January 2020. (*Id.* ¶ 23.) Besides the Motion to Quash, Defendants did not file anything else in the Family Law Case during their eight-month representation of Steven. (*Id.*) Thus, Defendants did not file the abatement and modification motions that were discussed at the engagement meeting. (*Id.* ¶¶ 22, 24.) In November 2019, Christopher Karlen, concurrent second chair, filed a Motion to Modify on Steven's behalf. (*Id.* ¶ 27.) The GAL moved to strike Steven's pleadings for non-payment of GAL fees. (*Id.* ¶ 25.) Defendants did not file a response, nor did they advise Steven of its pendency or urgency. (*Id.*) Trial was scheduled for November 14, 2019. (*Id.* ¶ 29, 33.) Defendants did not appear and the case was continued to December 2019. (*Id.* ¶¶ 29-30, 33.) Defendants did not prepare timely or adequately for the December trial setting. (*Id.* ¶¶ 29-30.)

In the weeks before the December trial setting, Defendants sent Steven written questions for Lucille to prepare, asking Steven to obtain Lucille's anticipated answers in advance. (*Id.* ¶ 31.) Before Lucille testified, Defendants met privately with her in a room outside the courtroom to prepare her responses. (*Id.*) At the time, Lucille was a minor, and Defendants were not Lucille's

attorneys. (*Id.*) Lucille had no independent counsel present. (*Id.*) Plaintiffs contend that this private coaching of a minor witness who was not Defendants' client, without independent counsel, constitutes an independent breach of duty to Lucille as the intended beneficiary of the representation. (*Id.*)

After the December trial date, the case was again continued. (*Id.* ¶ 33.) In January 2020, Defendants withdrew from their representation of Steven. (*Id.* ¶¶ 32-33.) In March 2020, the court in the Family Law Case ordered that Lucille's mother was free to take her over spring break, and Lucille was subsequently transported out of state against her will to a therapeutic reunification program. (*Id.* ¶¶ 3, 20, 33, 39-43, 46.) Plaintiffs represent that Lucille was forced on a plane, threatened with handcuffs, and denied access to her phone while in the reunification program. (*Id.* ¶¶ 39-43.) Steven and state police went to the reunification program after spring break ended, officers advised Lucille's mother that Steven had custody rights as of that date, and Lucille left with Steven. (*Id.* ¶¶ 43-45.) Plaintiffs allege that "[t]he legal vacuum that made the transport and detention possible was created by Defendants' inaction." (*Id.* ¶ 46.)

In April 2020, Steven's Motion to Modify was stricken without being heard on the merits, and his pleading was never reinstated. (*Id.* ¶¶ 25-26, 33.) Trial was held and the case was taken under advisement in August 2020. (*Id.* ¶ 33.) In January 2021, judgment was entered in the Family Law Case, granting sole custody to Lucille's mother; ordering 90-days of no contact between Steven and Lucille; restricting Steven to supervised visitation; finding Steven in contempt; imposing $19,500 in child support arrears; and ordering Steven to pay $2,190 in medical expenses, $4,000 in GAL fees, and $30,000 of Lucille's mother's attorney's fees. (*Id.* ¶¶ 4, 33, 38.) The judgment also noted that Steven did not have any pleadings on file to support his requests. (*Id.*)

## PROCEDURAL BACKGROUND

On April 9, 2026, Steven and Lucille filed a Complaint with this Court seeking damages and alleging that Defendants negligently represented him in the Family Law Case. (ECF No. 1 ¶ 1.) Plaintiffs raised the following five claims: (1) Legal Malpractice as to Steven; (2) Legal Malpractice as to Lucille as an Intended Beneficiary; (3) Breach of Fiduciary Duty as to both Plaintiffs; (4) Fee Disgorgement as to both Plaintiffs; and (5) Alter-Ego Liability against Jane Ellen Tomich. (*Id.* ¶¶ 50-73.)

On July 15, 2026, Defendants filed the instant Motion to Dismiss, arguing that Lucille lacks standing, Steven's claims are barred by the statute of limitations, and both Lucille and Steven fail to state a claim.[3] (ECF Nos. 18, 19.) In response, Plaintiffs argue that Lucille has standing and has stated a claim, as Defendants performed services intended by Steven to benefit Lucille, citing *Donahue v. Shughart*, 900 S.W.2d 624, 626-29 (Mo. banc 1995). (ECF No. 25.) Thereafter, Defendants filed their reply. (ECF No. 27.)

Plaintiffs subsequently filed a Motion for Leave to File their First Amended Complaint and to Drop Parties Under Rule 21, requesting that this Court drop Steven as a plaintiff and Jane Ellen Tomich as a defendant and permit Plaintiffs to file their attached First Amended Complaint. (ECF

---

[3] To their memorandum in support of their motion, Defendants attached, *inter alia*, the Findings of Fact, Conclusions of Law and Judgment of Modification ("Family Judgment") from the circuit court in the Family Law Case (ECF No. 19-3). *See Peterson v. Peterson*, No. 0511-FC02411-07 (Jan. 21, 2021). The Court finds this Family Judgment is a public record, is embraced by the pleadings, and its authenticity is unchallenged. In the twenty-eight-page Family Judgment, the court explained that the mother initiated the custody modification and contempt proceedings in 2017, yet Steven did not hire counsel or file his modification motion until 2019. (ECF No. 19-3 at 3, 7.) The court also found "overwhelming" evidence that "any form of unsupervised contact between [Steven] and [Lucille] had the potential to harm [Lucille]," (*Id.* at 9) and that "[Lucille] has been placed in the middle of her parents' contentious relationship for the last ten years." (*Id.* at 13). The Court further found that in August 2020, Steven informed the court that he had taken Lucille, at the age of seventeen and during the ongoing custody dispute, to marry a thirty-one-year-old in Wyoming, and Steven requested her emancipation. (*Id.* at 16.) Lucille's mother subsequently initiated annulment proceedings in Wyoming based on fraud. (*Id.* at 17-18.) The court characterized the case as "severe," noted that Lucille lied under oath in the Wyoming proceeding, and explained, "the Court is aware it is unable to blame [Lucille] in absolute for her poor decision-making, as she has had the poorest [o]f role models since 2017," referencing Steven. (*Id.* at 19, 22.)

Nos. 28, 29.) After this motion for leave was fully briefed (ECF Nos. 30, 31), Plaintiffs filed a Motion for Leave to Substitute Corrected Proposed First Amended Complaint and for Exhibit Filing Directions (hereinafter, "Motion to Amend") (ECF No. 33). Therein, Plaintiffs requested that the Court substitute their proposed First Amended Complaint with their updated attached complaint, and they maintained their request to drop parties under Fed. R. Civ. P. 21. (*Id.*) Plaintiffs further requested that the Court permit them to submit exhibits under seal. (ECF Nos. 32, 33, 40.)[4]

Thereafter, this Court entered an order construing Plaintiffs' motion as a Motion for Leave to File Second Amended Complaint, and directing the parties to file their respective memoranda. (ECF No. 34.) In their response, Defendants consented to Plaintiffs' voluntary dismissal of Steven and Jane Ellen Tomich, but they argue that it is futile to allow Plaintiffs to amend the complaint. (ECF No. 36) In reply, Plaintiffs argue that their proposed Second Amended Complaint is not futile, as it contains substantive changes demonstrating that Defendants owed a duty to Lucille. (ECF No. 38.)

## DISCUSSION

For the following reasons, this Court grants Plaintiffs' request to drop parties, grants Defendants' Motion to Dismiss, denies Plaintiffs' Motion to Amend as futile, and denies Plaintiffs' remaining motions as moot.

### I. Rule 21 Request (ECF No. 33)

The Court first addresses Plaintiffs' request to drop Steven as a plaintiff and Jane Ellen Tomich as a defendant pursuant to Fed. R. Civ. P. 21. Rule 21 provides, as relevant, that, "[o]n

[4] In these filings, Plaintiffs appear to seek guidance on the filing of audio and video evidence and request that these exhibits be filed under seal. However, it appears that Plaintiffs intend to file these exhibits without attaching them to a motion or memorandum. *See* ECF No. 42 (citing E.D.Mo. L.R. 3.02). Moreover, the content of these recordings is contained within Plaintiffs' allegations in their pleading, allegations which this Court takes as true at this stage in litigation.

motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "The Supreme Court has explained, 'Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered.'" *Bailey v. Bayer CropScience*, 563 F.3d 302, 308 (8th Cir. 2009) (quoting *Newman-Green v. Alfonzo-Larrain,* 490 U.S. 826, 832 (1989)).

This Court grants Plaintiffs' request and dismisses Steven and Jane Ellen Tomich from this action. Dismissal of these parties does not destroy diversity jurisdiction in this matter, as Lucille and the remaining Defendants[5] are citizens of different states. (ECF Nos. 1 ¶ 10; 10; 22-24.) Moreover, Defendants consent to the dismissal of these two parties. (ECF Nos. 33, 36.) Thus, Plaintiff Steven Peterson and Defendant Jane Ellen Tomich are dismissed without prejudice pursuant to Rule 21. As a result, the remaining claims are Legal Malpractice, Breach of Fiduciary Duty, and Fee Disgorgement, all raised solely by Lucille.

## II. Motion to Dismiss (ECF No. 18)

The Court next addresses Defendants' Motion to Dismiss as it relates to the remaining claims. Defendants argue that Lucille, as the only remaining plaintiff, lacks standing, is not a real party in interest, and otherwise fails to state claims of Legal Malpractice, Breach of Fiduciary Duty, and Fee Disgorgement. (ECF Nos. 19 at 4-6; 27.) Plaintiffs disagree, arguing that Lucille has standing as an intended beneficiary of Defendants' representation of Steven. (ECF No. 25.) For the following reasons, this Court grants Defendants' Motion to Dismiss.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.

---

[5] Hereinafter, "Defendants" will refer only to Deborah Jean Tomich Daiber and Tomich Law Firm, LLC, and "Plaintiff" will refer to Lucille.

544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556). Several principles guide the Court in determining whether a complaint meets the plausibility standard. The Court must take the plaintiff's factual allegations as true. *Iqbal*, 556 U.S. at 678. "This tenet does not apply, however, to legal conclusions or 'formulaic recitation of the elements of a cause of action'; such allegations may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678). Rather, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Courts are to construe *pro se* complaints liberally, but such pleadings still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted).

"Article III standing applies to all claims adjudicated in federal court, including state law claims." *Graeff v. Ashcroft*, 4:22-CV-971 RLW, 2023 WL 2424266, at *4 (E.D. Mo. Mar. 9, 2023) (citations omitted). A plaintiff has the burden to show that she has a personal stake in the case by showing: "(i) that she suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury likely was caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion v. Ramirez*, 594 U.S. 413, 423, 430 (2021). "To survive a motion to dismiss, a plaintiff need only allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing." *Johnson v. Griffin*, 69 F.4th 506, 510 (8th Cir. 2023) (internal quotation omitted). "In diversity cases, the plaintiff must not only meet the case or controversy requirements of Article III

of the Constitution but also must have standing to sue under the relevant state law."[6] *McGowen v. Commerce Bank*, 11 F.4th 702, 708 (8th Cir. 2021) (cleaned up, citations omitted). Under Missouri law, "[s]tanding requires that a party have a personal stake arising from a threatened or actual injury." *Schweich v. Nixon*, 408 S.W.3d 769, 774 (Mo. banc 2013). "The issue is whether plaintiff has a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief." *Id.* at 775 (internal marks omitted). "A party establishes standing, therefore, by showing that it has some legally protectable interest in the litigation so as to be directly and adversely affected by its outcome." *Id.*

"Generally, an attorney is not liable to a third party who is not his or her client because the attorney is not in an attorney-client relationship with the third party." *Sheffield v. Matlock*, 587 S.W.3d 723, 729 (Mo. App. 2019) (citing *Roth v. La Societe Anonyme Turbomeca France*, 120 S.W.3d 764, 776 (Mo. App. 2003) ("[A]n attorney is not liable to a third party who is not his or her client because the attorney is not in privity of contract—or in an attorney-client relationship—with the third party")). "This general rule arises out of the attorney's fiduciary duty to the client, and the public policy that attorneys be able to discharge that duty by freely using those procedures that are necessary to competently represent their clients unfettered by fear of personal liability." *Sheffield*, 587 S.W.3d at 729 (quotation omitted). As an exception to this general rule, Missouri courts have found privity between an attorney and a third party where the client specifically intended for the attorney's services to benefit the third party. *See Donahue*, 900 S.W.2d at 626-29.

In *Donahue*, the intended recipients of a gift causa mortis brought a legal malpractice action against the donor's attorney and his law firm. *Id.* at 625. The Missouri Supreme Court stated that

[6] "Unlike Article III jurisdictional justiciability, Missouri justiciability is a prudential doctrine. Still, the tests are similar, and Missouri courts have borrowed from federal standing jurisprudence in shaping Missouri's applicable standard." *Thompson v. Genesco*, 733 S.W.3d 559, 562 n.7 (Mo. App. 2026).

an attorney-client relationship, an element for both legal malpractice and breach of fiduciary claims,[7] "may be satisfied by establishing as a matter of fact [ ] that…an attorney-client relationship existed in which the attorney-defendant performed services specifically intended by the client to benefit [non-client] plaintiffs." *Id.* at 628-29. The Court stated that, "[a]s a separate matter, the question of legal duty of attorneys to non-clients will be determined by weighing [the following] factors: (1) the existence of a specific intent by the client that the purpose of the attorney's services were to benefit the plaintiffs; (2) the foreseeability of the harm to the plaintiffs as a result of the attorney's negligence; (3) the degree of certainty that the plaintiffs will suffer injury from attorney misconduct; (4) the closeness of the connection between the attorney's conduct and the injury; (5) the policy of preventing future harm; and (6) the burden on the profession of recognizing liability under the circumstances." *Id.* at 629.

As explained by a court within the Eighth Circuit, the court in *Donahue* "included the specific intent requirement as both a condition precedent and as a balancing factor to make it clear that the intent of the client is of primary importance[,]" and without this specific intent, "there is no claim." *Merchants Bonding v. Noland*, No. 2:10–CV-04095, 2010 WL 3584017, at *3 n.1 (W.D. Mo. Sep. 7, 2010). "Missouri courts have [also] recognized that 'the client's purpose and specific intent to benefit a non-client through the attorney-client relationship[,] is crucial.'" *Tutera Invest. v. Pullen*, No. 04-1155-CV-W-GAF, 2005 WL 2285558, at *3 (Mo. App. 2005) (citing *Mark Twain Kansas City Bank v. Jackson*, 912 S.W.2d 536, 539 (Mo. App. 1995)). Missouri courts have further found that the doctrine requires the plaintiff to show that the client intended the

[7] *See Henreid v. Kodner Watkins*, No. 4:23CV249, 2024 WL 5200857, at *3 (E.D. Mo. Dec. 23, 2024) ("The elements of a claim for breach of fiduciary duty are: '(1) an attorney-client relationship; (2) breach of a fiduciary obligation by the attorney; (3) proximate causation; (4) damages to the client; (5) no other recognized tort encompasses the facts alleged.' The elements of legal malpractice are: '(1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of plaintiff's damages; (4) damages to the plaintiff.'") (quoting *Klemme v. Best*, 941 S.W.2d 493, 495-96 (Mo. banc. 1997)).

plaintiff to be the direct and exclusive beneficiary of the attorney's services. *See Shanahan v. Spencer Fane*, 730 S.W.3d 206, 210 (Mo. App. 2025) (citing *Multilist Serv. of Cape Girardeau v. Wilson*, 14 S.W.3d 110, 114 (Mo. App. 2000)). "If there is no evidence that the client retained the defendant-attorney with the specific purpose of benefitting the plaintiff—rather than the client himself—then the plaintiff is not the direct and exclusive beneficiary of the representation[,] and the intended beneficiary doctrine does not apply." *Shanahan*, 730 S.W.3d at 210-11 (quotation omitted and cleaned up).

This Court agrees with Defendants that Plaintiff lacks standing to bring these claims against them. Here, Plaintiff's only asserted interest in her claims against Defendants is as the child of a father represented by Defendants in a custody dispute. For reasons explained in more detail below, she does not sufficiently allege that she has a legally protectable interest in Defendants' conduct during their representation of her father. *See Schweich*, 408 S.W.3d at 775; *see also Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972) ("Appellee has standing to seek redress for injuries done to [her], but may not seek redress for injuries done to others."); *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008) ("As a general rule, a plaintiff may only assert [her] own injury in fact and cannot rest [her] claim to relief on the legal rights or interests of third parties.") (internal quotation omitted). Further, Plaintiff fails to allege sufficient facts showing that her purported injury – related to the reunification program – was caused by Defendants, and Defendants' knowledge of the possibility of Lucille being sent to the program when Stephen hired them does not cure this lack of causation. Moreover, Plaintiff cites *no* authority, outside of *Donahue*, to support her theory that a child has standing to bring a malpractice action based on an attorney's representation of that child's parent in a custody dispute. *See TransUnion*, 594 U.S. at 430-31 ("As

the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing.") (citation omitted).

For overlapping reasons, even if Plaintiff has standing, she fails to state a claim, as Defendants did not represent her, and she fails to demonstrate that the intended beneficiary doctrine applies here. Crucially, as she seemingly admits in her brief (ECF No. 25 at 7), Lucille was neither the direct nor exclusive beneficiary of Defendants' representation. Plaintiff concedes that Steven "plainly had his own stake in custody, support, and fee relief"; but she contends that she was the "specifically intended direct beneficiary of particular, identified components of the undertaking[,]" including "the promised professional work directed at her custody, residence, therapy, schooling, parent-child relationship, and protection from the specific reunification program…." (*Id.*) However, this Court is not persuaded that Steven's intent for Lucille to benefit from "components" of his attorney-client relationship with Defendants satisfies the specific intent required under *Donahue*. Indeed, Steven hired Defendants to represent *himself* in the Family Law Case – to address not only custody issues but also child support abatement – and any intended benefit to Lucille was merely incidental to her father's representation. *See Donahue*, 900 S.W.2d at 628 ("A benefit that is merely incidental or indirect will not satisfy [the intent] factor."). The Court also notes that *Donahue* has consistently been applied in the context of a beneficiary of property, and Plaintiff fails to cite any case extending Donahue to an attorney's representation of a parent in a custody matter. Therefore, Plaintiff fails to allege sufficient facts showing that Steven hired Defendants specifically intending them to perform services to benefit Lucille, rather than himself, and the Court need not address the remaining factors. *See Shanahan*, 730 S.W.3d at 210-11; *Merchants*, N2010 WL 3584017, at *3 n.1.

Nevertheless, the Court also finds that the other factors weigh against applying *Donahue* and highlight the issues with applying *Donahue* to a custody proceeding like the one at issue here. The foreseeability of the harm to the plaintiff as a result of the attorney's negligence and the degree of certainty that the plaintiffs will suffer injury from attorney misconduct are lacking, as one parent's failure or success in the Family Law Case does not necessarily dictate whether Plaintiff is benefited or harmed, (hence, the involvement of a GAL) particularly in light of the possibility that a parent's desires are in their own best interest and not in their child's best interest. The closeness of the connection between Defendants' conduct and Lucille's alleged injury also weighs against applying *Donahue*. Finally, the policy of preventing future harm and the burden on the profession of recognizing liability weigh *heavily* against applying *Donahue* to the facts here. *See generally Pelham v. Griesheimer*, 440 N.E.2d 96, 101 (IL 1982) (rejecting "intent to directly benefit" test where an attorney was hired to obtain a divorce, property settlement, and custody of children; noting that "[t]o conclude that an attorney representing one of the spouses also owes a legal duty to the children of the two litigants would clearly create conflict-of-interest situations.").

The claims raised here – legal malpractice and breach of fiduciary duty – require a showing of a duty, and Lucille fails to demonstrate that a fiduciary relationship existed between she and Defendants, or that Defendants specifically owed her a duty of care. *See Meyer v. Carson*, 614 S.W.3d 618, 625 (Mo. App. 2020) (malpractice claim requires showing that defendant owed a duty to plaintiff, typically through the existence of an attorney client relationship); *Henry v. Farmers Ins.*, 444 S.W.3d 471, 480 (Mo. App. 2014) (breach of a fiduciary duty claim first requires showing of the existence of a fiduciary duty between the plaintiff and the defending party). Because Lucille has not demonstrated that a fiduciary relationship existed between she and Defendants or that she ever paid any fees to them in their representation of her father, she has not shown that she has a

personal interest in the fees, and her claim for fee disgorgement must fail. *Cf. Brown v. Brown-Thill*, 543 S.W.3d 620, 635 (Mo. App. 2018) (affirming denial of request for refund or disgorgement of previously paid attorney fees where parties had no personal interest in fees). For all of these reasons, taking Plaintiff's factual allegations as true, this Court finds that Plaintiff lacks standing and fails to state a claim, and it grants Defendants' Motion to Dismiss.

**III. Motion to Amend (ECF No. 33)**

The Court finally addresses Plaintiff's Motion to Amend. Defendants argue that the Court should not grant leave to amend, as the proposed amendments are futile. (ECF No. 36.) Plaintiff contends that the proposed amendments satisfy *Donahue*. (ECF No. 38.) For the following reasons, Plaintiff's Motion to Amend is denied as futile.

"A district court should freely grant leave to amend 'when justice so requires.'" *Ghosh v. Abbott Lab'y*, 170 F.4th 1141, 1144 (8th Cir. 2026) (quoting Fed. R. Civ. P. 15(a)(2)). "But the right is not automatic, and the district court may deny the motion due to 'futility of the amendment.'" *Ghosh*, 170 F.4th at 1144 (quoting *Anderson v. Bank*, 23 F.4th 1056, 1060 (8th Cir. 2022)). "An amendment is futile if it would fail to withstand a motion to dismiss under Rule 12(b)(6)." *Ghoush*, 170 F.4th at 1144 (citing *Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010)).

The majority of Plaintiff's proposed amendments include legal conclusions or factual allegations that do not have any impact on the deficiencies of the action. As to her argument under *Donahue*, rather than arguing her status as Steven's daughter created a duty of care, Plaintiff argues that she was owed a duty of care by Steven's attorney because specific work was done to prevent her transport to the reunification program and the representation was intended for her protection. (ECF No. 33-2 ¶¶ 8, 26, 34-35, 47-49, 52-58.) However, Plaintiff maintains her position that Defendants were hired by Steven, *in part*, for the purpose of benefiting her, and she challenges

that *Donahue* requires that the representation be exclusively for the third party's benefit. (ECF Nos. 33-2 ¶¶ 15, 30, 43, 47, 57, 62, 64; 38 ¶¶ 3, 7, 18, 21.) *Donahue* itself provides, "[a] benefit that is merely incidental or indirect will not satisfy [the intent] factor[,]" 900 S.W.2d at 628, and the Court finds that the "direct and exclusive" rule articulated by the Missouri Appellate Court in *Shanahan* is persuasive in interpreting *Donahue* under the facts alleged here, *see Shanahan*, 730 S.W.3d at 210-11. Thus, Plaintiff's proposed amended complaint still fails to establish standing or the required intent under *Donahue*, fails to allege facts showing that Defendants owed Plaintiff a duty, and fails to state a claim. As a result, Plaintiff's Motion to Amend is denied as futile. *See Ghosh*, 170 F.4th at 1144.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Rule 21 Request (ECF No. 33) is **GRANTED**. Plaintiff Steven Peterson and Defendant Jane Ellen Tomich are dismissed without prejudice pursuant to Rule 21.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (ECF No. 18) is **GRANTED**. Plaintiff's claims are dismissed. An appropriate Judgment is filed herewith.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend (ECF No. 33) is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion for Limited Sealing of Identified Recording and Deposition Material (ECF No. 32) and Motion for Extension to Cure Local Rule 13.05 Submission (ECF No. 40) are **DENIED** as moot. *See generally supra*, n.4.

**JOSEPH DUEKER**
**UNITED STATES MAGISTRATE JUDGE**

Dated this 5th day of November, 2026.